Exhibit A

1
2
3
4
5
6
7
8

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

9

NGOC TRAN and MARKITA GUIDEN,

10

Plaintiffs,

11

v.

12

DAIYA HEALTHCARE PLLC, a Washington
professional limited liability company; and

13

BHUPINDER WALIA and "JANE DOE" WALIA,
and their marital community,

14
15

Defendants.

NO. 21-2-05474-5 KNT

SUMMONS

16

TO:    All of the Above-Named Defendants

17

A lawsuit has been started against you in the above-entitled court by Ngoc Tran

18

and Markita Guiden. Plaintiffs' claims are stated in the written Complaint, a copy of

19

which is served upon you with this Summons.

20

In order to defend against this lawsuit, you must respond to the Complaint by

21

stating your defense in writing, and by serving a copy upon the persons signing this

22

Summons within 20 days after the service of this Summons within the State of

23

Washington or 60 days if served outside of the State of Washington, excluding the day of

24

service, or a default judgment may be entered against you without notice. A default

25
26

SUMMONS - 1
[4831-8868-7847]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

judgment is one where Plaintiffs are entitled to what they ask for because you have not responded. If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiffs file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the persons signing this Summons. Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the Court, or the service on you of this Summons and Complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 26th day of April, 2021.

GORDON THOMAS HONEYWELL LLP

By: _Stephanie Bloomfield_

Stephanie Bloomfield, WSBA No. 24251
sbloomfield@gth-law.com
Andrea H. McNeely, WSBA No.
amcneely@gth-law.com

ATTORNEYS FOR PLAINTIFF

)

SUMMONS - 2
[4831-8868-7847]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

NGOC TRAN and MARKITA GUIDEN,

Plaintiffs,

v.

DAIYA HEALTHCARE PLLC, a Washington professional limited liability company; and BHUPINDER WALIA and "JANE DOE" WALIA, and their marital community,

Defendants.

NO. 21-2-05474-5 KNT

COMPLAINT FOR DAMAGES

## I. PARTIES

1.1    In this Complaint Plaintiff Ngoc Tran ("Tran") asserts claims for discrimination and retaliation in violation of RCW Chapter 49.60, wrongful termination in violation of public policy, retaliation in violation of the False Claims Act 31 U.S.C. § 3729, 3730, negligent or intentional infliction of emotional distress, defamation, and intentional interference with a business expectancy against all Defendants. Tran also asserts claims for discrimination and retaliation under Title VII and the ADA against Defendant Daiya Healthcare PLLC.

1.2    In this Complaint Plaintiff Markita Guiden ("Guiden") asserts claims for discrimination and retaliation in violation of RCW Chapter 49.60, wrongful termination in

COMPLAINT - 1
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

violation of public policy, and retaliation in violation of the False Claims Act 31 U.S.C. § 3729, 3730 against all Defendants.

1.3      This court has original and concurrent jurisdiction of all claims asserted.

1.4      Plaintiff Tran resides in King County, Washington and was employed by Defendant Daiya Healthcare PLLC, and primarily worked at facilities in South King County Washington (Burien and Auburn) as well as in Pierce County (Puyallup), Washington, where a substantial part of the events or omissions giving rise to this claim occurred and where the injury and damage to Tran occurred.

1.5      Plaintiff Guiden resides in King County, Washington and was employed by Defendant Daiya Healthcare PLLC and primarily worked at facilities in South King County Washington (Burien and Auburn) as well as in Pierce County (Puyallup), Washington, where a substantial part of the events or omissions giving rise to this claim occurred and where the injury and damage to Guiden occurred.

1.6      Defendant Daiya Healthcare PLLC ("Daiya") is a Washington professional limited liability company, with its principal place of business in Bellevue. Daiya does business throughout the South Puget Sound area and including at facilities in Burien, Auburn (South King County) and Puyallup (Pierce County) Washington.

1.7      Defendant Bhupinder Walia ("Walia") resides in King County, Washington and, in the course of his work with Daiya, works in Burien, Auburn (South King County) and Puyallup (Pierce County) Washington. Walia is married to Defendant "Jane Doe" Walia, and his actions described in this Complaint were for the benefit of his wife and their marital community.

1.8      Venue is appropriate in King County, Washington.

COMPLAINT - 2
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

## II. FACTS

2.1     Daiya is Washington-based company that provides healthcare providers to patients in post-acute and long-term care facilities throughout Washington and in several other states.

2.2     Daiya employs over 500 employees.

2.3     As a corporate entity, Daiya acts through its officers and employees, and the actions of its officers and employees with respect to Plaintiffs and their employment described herein were all within the scope of their employment with Daiya and attributable to Daiya.

2.4     Plaintiff Tran is female, a veteran of the United States Air Force (Operation Enduring Freedom 2001-2005), has a same-sex sexual orientation, and is of Vietnamese-American national origin.

2.5     Plaintiff Tran is a highly trained medical professional with thousands of hours of training and is licensed as a Physician Assistant in the State of Washington. She has substantial experience and expertise in psychiatry.

2.6     As a Physician Assistant, Plaintiff works under a physician's supervision to diagnose, develop and manage treatment plans, prescribe medications, and often serves as the primary healthcare provider for her patients.

2.7     Plaintiff Tran began working for Defendant Daiya in Washington as a Physician Assistant in March 2019 providing clinical care to patients at her various assigned work sites, including Burien and Puyallup.

2.8     Plaintiff Guiden is female, has a same-sex sexual orientation, and is African American.

2.9     Plaintiff Guiden is a highly trained medical professional with thousands of hours of training and is licensed as an Advanced Registered Nurse Practitioner ("ARNP") in the State of Washington. She has substantial experience and expertise in cardiology.

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2.10   As an ARNP, Guiden provides primary care and can admit, discharge, diagnose, develop and manage treatment plans, prescribe medications, and often serves as the primary healthcare provider for her patients requiring physician supervision only if implementing new or unfamiliar practices.

2.11   Guiden began working for Defendant Daiya in Washington as an ARNP in May 2019, and was assigned to various worksites, including Burien and Puyallup.

2.12   Plaintiffs consistently met or exceeded expectations throughout their employment with Daiya, and never received any negative performance reviews or reprimands.

2.13   At all times relevant in 2019, Plaintiffs reported to Daiya's owner and CEO, Defendant Walia.

2.14   Beginning in July 2019, Plaintiffs also began reporting to Daiya's Chief Operating Officer Chris Lafrenz.

2.15   Throughout her employment Defendants asked Plaintiff Tran to take on additional tasks and responsibilities, including training new providers and requested that she take on a "preceptor" role.  In healthcare a preceptor is an experienced practitioner who supervises clinical practitioners and helps educate and evaluate their performance.

2.16   In May 2019, Walia asked Tran to take on additional duties as an Infectious Disease Physician Assistant, in addition to her Psychiatric Physician Assistant Duties.

2.17   At the time, Tran had continued working outside Daiya as a contractor who reviewed Veteran disability submissions.  Based on Defendants' promise of an expanded role with a substantial additional pay raise, Tran resigned her outside position in May 2019 to devote additional time to her work with Defendants. Tran took on those additional duties in June 2019.

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2.18   In the course of their employment, Plaintiffs became concerned that the coding practices imposed by Walia on Daiya providers did not follow federally imposed guidelines.

2.19   The Centers for Medicare and Medicaid Services (CMS) and the National Center for Health Statistics (NCHS), two departments within the United States Government's Department of Health and Human Services (DHHS) provides guidelines to be used by providers in coding and reporting that use the International Classification of Diseases, 10th Revision, Clinical Modification (ICD-10-CM).

2.20   The ICD-10-CM is a morbidity classification published by the United States for classifying diagnoses and reason for visits in all health care settings. The ICD-10-CM is based on the ICD-10, the statistical classification of disease published by the World Health Organization (WHO). These guidelines have been approved by the four organizations that make up the Cooperating Parties for the ICD-10-CM: the American Hospital Association (AHA), the American Health Information Management Association (AHIMA), CMS, and NCHS.

2.21   DHHS has mandated that all entities covered by the Health Insurance Portability and Accountability Act ("HIPAA") must use ICD-10-CM codes. The ICD-10-CM codes are used for a variety of purposes including billing and claims reimbursement.

2.22   CMS and NCCHS publish official guidelines for Coding and Reporting that are to be followed by providers using ICD-10-CM coding for services that will be submitted to Medicare (and others) for reimbursement.

2.23   Because the coding practices Defendants mandated were not accurate and did not represent services actually provided by the provider seeing the patient, Plaintiffs reasonably believed the practices were fraudulent and/or in violation of law.

COMPLAINT - 5
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2.24   Tran initially raised her concerns about coding with Defendant Daiya's then Chief Operating Officer, Theresa Utecht.

2.25   Utecht instructed Tran to code properly for the services provided.

2.26   Tran followed Utecht's instructions and continued to code properly for services she provided.

2.27   Because Tran followed the law and federal guidelines rather than the improper practices imposed by Daiya, Walia confronted Tran about her coding. Tran responded that she was coding properly as instructed by Utecht.

2.28   Shortly thereafter, Utecht's employment with Daiya ended.

2.29   Tran continued to raise coding issues verbally with Walia, but he brushed off her concerns.

2.30   Walia continued to pressure Tran to "upcode" or use codes that would allow Defendants to obtain higher reimbursement than was justified by the actual time and services Tran rendered to the patient.

2.31   By way of example, on or about July 31, 2019, Walia wrote to Tran accusing her of improperly coding her encounters with patients with the 99308 code, claiming that her documentation did not support this and to "take corrective action immediately." This was due to Tran's continued refusal to falsely upcode her interactions to the 99310 code Defendants were pushing to obtain higher reimbursements.

2.32   The parameters for using ICD-10-CM code 99308 vs. 99310 are briefly summarized as follows:

| **99308** | **99310** |
|---|---|
| Expanded problem-focused history | Comprehensive history |
| Expanded problem-focused exam | Comprehensive exam |
| Low complexity medical decision making | High complexity medical decision making |
| Typical time = 15 minutes | Typical time = 35 minutes |

2.33   On July 31, 2019, Walia criticized Tran's documentation and referenced purported "complaints" about Tran's documentation at the lower 99308 coding level.

COMPLAINT - 6
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2.34   Walia told Tran he would be reviewing all of her medical notes personally.

2.35   At this point, concerned about these various issues, Tran told Defendants that she would not continue in the expanded role with Infectious Disease duties, and expressed her desire to obtain full time work as a psychiatric Physician Assistant.

2.36   Around this same time Tran was called into a meeting with the new COO, Chris Lafrenz, to discuss the coding issues in Walia's July 31, 2019 email. During this meeting Lafrenz told Tran she was gay and then described how she chased after her wife during a work interview. Tran became very uncomfortable.  Lafrenz then told Tran she liked her women "butch and brown" (like Tran, who identifies as "butch" and "brown"). Lafrenz was crossing and uncrossing her legs repeatedly during this interaction.

2.37   Knowing Lafrenz was the new COO with authority over her pay and related issues, Tran was extremely concerned about Lafrenz's comments and actions, and was extremely anxious about the situation.

2.38   Tran discussed these comments with Guiden at the time, and Tran tried to avoid Lafrenz as much as possible so she would not be subjected to further unwelcome sexually based harassment.

2.39   Throughout Plaintiffs' employment, Defendant Walia continually referred to women with derogatory sexual terms. Walia referred to female employees he did not like as "whores", "c*nts", and "b*tches."

2.40   Another Physician Assistant, Melinda Brown, who also protested the coding practices of Defendants, expressed her concerns about coding to Defendants when she resigned. To Plaintiffs' knowledge, no investigation was performed and Defendants continued to pressure employees to "upcode" beyond what the services warranted.

COMPLAINT - 7
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2.41   Defendants continued to call on Tran for additional duties, now as an Internal Medicine Physician Assistant, after they fired another employee.

2.42   Around this same time frame Defendant Walia told Tran, "Thank you so much for filling in in Burien – they LOVE you!  People stopped me in the hallways and asked me repeatedly to have you stay at Burien forever."

2.43   Tran continued to receive positive comments about her work, and on August 9, 2019, Defendants provided Plaintiff Tran with a bonus.

2.44   Around August 14, 2019, a group of Daiya providers met socially outside of work.  In the course of the gathering, those present began to discuss their concerns with Defendants' coding practices. Tran was not present at the gathering, but Guiden was.

2.45   After the gathering, Guiden shared with Tran that one of the employees in attendance, Daiya employee Alicia Ferrell who had indicated that she was going to resign, said she wanted to report Walia's actions to the Medical Board.

2.46   After the gathering, Tran again tried to raise the issue of improper coding with Walia directly hoping he would now take her reports seriously and correct the problems.

2.47   However, Walia and COO Lafrenz responded by telling Alicia Ferrell that Tran was "a whistleblower," who had revealed the discussion at the social event and, as a result, they would all be investigated for fraud.  This caused the other providers to react angrily toward Tran.

2.48   Shortly thereafter in August 2019, Walia held a Daiya staff meeting.  Daiya did not investigate any reports of fraud or improper coding, did not address the concerns in the staff meeting, and did not make any effort to address the hostility directed at Tran.

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2.49    On September 4, 2019, Defendants provided Tran with a substantial raise in her salary "per Dr. Walia" effective September 2, 2019.

2.50    Soon after this, Plaintiffs became aware that Defendant Walia was sending electronic healthcare records ("EHRs") which are patient encounter records to India, where he was paying ten cents per chart to have them copied and then pasted into a Word format. This was extremely concerning to Plaintiffs, because this would permit edits or changes to EHRs without there being a record in the system of who and when the changes were made.  In other words, if a provider was not "upcoding" as pressured to do by Defendants, Daiya could change the EHR through the copied chart and paste it back in, avoiding any warning to the actual provider of the changes made to their charting and coding.

2.51    On or about September 13, 2019, Tran reported concerns about psychological harm to a patient with dementia due to repeated moves of the patient's room. At the direction of the facility's director of nursing, Tran made a written note regarding the issues with the patient.

2.52    COO Lafrenz then called Tran into her office and pressured Tran to change the note. Lafrenz forced Tran to make the changes under duress. However, because the revised note was not accurate and complete, Tran did not submit it.

2.53    Tran later learned that the revised note was subsequently signed and submitted by Defendant Walia, who had not seen the patient. This submission was in violation of the law and applicable standards.

2.54    Also on or about October 4, 2019, Walia began escalating his inappropriate comments to Guiden, calling her at home and at work and asking her "are you alone?"  Walia made a variety of inappropriate derogatory comments of a sexual nature to Guiden, referring to female nurses as "c*nts", "whores" and "b*tches" and

COMPLAINT - 9
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

1   telling Guiden that a facility administrator was "f*cking powerless" because Walia had

2   "cut off his f*cking balls."

3       2.55   Guiden found these comments unwelcome and harassing, but Walia was

4   the CEO and owner of Daiya and she felt powerless. Guiden had no clear path to avoid

5   contact with Walia when he was demanding she respond to calls at home and work.

6       2.56   Plaintiffs also learned that Walia was paying another nurse to log in using

7   his credentials to make entries on patient charts, also an illegal practice.

8       2.57   Under applicable Medicare rules, physicians have to perform admissions.

9   Nevertheless, Walia offered Guiden an additional $70,000 per year to "do admissions in

10  bed." This made Guiden even more uncomfortable, bringing a sexual innuendo into what

11  she already believed to be an illegal practice.

12      2.58   After Guiden confirmed with licensing authorities that Medicare guidelines

13  would not allow her to do perform admissions in this fashion, Guiden declined the offer

14  and told Walia it was improper.

15      2.59   Guiden also asked to meet with an auditor or coding specialist at Daiya so

16  she could address her concerns. At no time was she allowed to meet with them to

17  address her concerns.

18      2.60   By October 2019, Tran was aware that Walia, who was reviewing her

19  patient documentation, would fraudulently note that Tran spent more time with patients

20  than she actually did, fraudulently upcoding her chart entries.

21      2.61   Also around this same time Tran met another Daiya employee, Adiba

22  Syeda, when they were both working at the Puyallup facility. Tran noted a medication

23  discrepancy for a patient and raised the issue with the nurses. The chart note included a

24  medication that had been discontinued for some time.

25

26

COMPLAINT - 10
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

1    2.62   Tran then pointed out the error to Dr. Syeda, who eventually admitted that

2    she had copied and pasted an earlier chart entry to save time.

3    2.63   Tran also reported this issue to COO Lafrenz, who dismissed Tran's

4    concerns.

5    2.64   Finally, fed up with these improper activities, and continued pressure to

6    "upcode," Tran asked in writing on the morning of Friday October 11, 2019, to meet with

7    an auditor who reviews coding, so that she could address concerns she had about how

8    she was being instructed by Defendants to improperly code for certain services.  Her

9    email expressly states: "I don't feel what I'm coding is in compliance. 99310 does not

10   match services, 99308 does."

11   2.65   Within 30 minutes after Tran sent the email asking to meet with the

12   auditor regarding her coding concerns, and raising a written concern about what she

13   believed to be a fraudulent practice of Defendants, Defendants suspended Plaintiff Tran

14   from all duties, citing a purported "complaint" against her that required investigation.

15   2.66   Tran had received no notice of any complaint before her written request to

16   meet with a coding auditor.

17   2.67   Guiden had previously protested what she reasonably believed to be

18   Medicare fraud directly to Walia and others at Daiya, but her concerns about improper

19   coding practices by Defendants had not been addressed.  On or about October 11, 2019

20   she emailed requesting a meeting with a coding specialist to address concerns of

21   improper coding.

22   2.68   Dr. Walia responded to Guiden's email that he would set up a meeting

23   with the coding specialist to address her concerns. He also wrote that Guiden should

24   chart and code properly for the services she was performing and not upcode or include

25   services not provided. This statement was in direct conflict with Defendants' practices,

26

COMPLAINT - 11
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

1  because Plaintiffs noted that Dr. Walia added procedures that were not performed,

2  increased time spent with the patient, and made changes to providers' submitted

3  documentation after the fact without the knowledge or consent of the providers involved.

4      2.69   On October 13, 2019, Guiden contacted Walia to report an incident in

5  Puyallup where a Daiya employee referred to Tran as a "c*nt", language similar to that

6  used by Walia to describe female employees he did not like. The employee then made a

7  variety of comments stereotyping Tran's sexual orientation and presentation as "manly

8  and intimidating" because Tran had ignored her. Guiden was concerned about this

9  discriminatory comment regarding Tran and what appeared to be a pattern of

10  persecuting Tran relating to her sexual orientation.

11      2.70   Concerned about what was going on and Daiya's response to her coding

12  fraud reports, Tran contacted the OIG to further report her concerns on or about

13  October 14, 2019.

14      2.71   At no time was Tran contacted by any investigator regarding any purported

15  complaint of any nature or any investigation by Defendants into her coding concerns.

16      2.72   Instead, two working days later, on Tuesday October 15, 2019,

17  Defendants terminated Tran's employment.  The only reasons Defendants provided to

18  Tran for her termination were: 1) Tran was not "friendly" enough; and 2) someone had

19  asked not to work in the same building with her.

20      2.73   On October 18, 2019, Tran was threatened by Defendant Daiya's attorney,

21  Patrick Vail, via email for reporting concerns about Defendant Daiya's improper coding

22  and fraudulent billing practices to two of the facilities where Tran had worked.

23      2.74   In the email, Vail, stating that he represented Daiya, threatened Tran with

24  a "financially ruinous" lawsuit if she continued to report improper coding and fraud and

25  for the first time stated that Tran was terminated "due to a pattern of egregious, unlawful

26

COMPLAINT - 12
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

and inappropriate conduct within the workplace and other violations of your obligations and job duties and Washington law, many of which resulted in numerous complaints from other staff . . . [including that] you made sexually inappropriate and harassing and threatening statement to an/or in the presence of other staff and created a hostile work environment for those staff members."

2.75   Vail's statements were false. Tran had not been notified of any unlawful, inappropriate, or other misconduct or complaints of sexual harassment or inappropriate conduct while employed by Daiya or when she was terminated.

2.76   No investigator ever contacted Tran on behalf of Daiya to discuss any such allegations before or after her termination.

2.77   Following Tran's termination, Lafrenz contacted Guiden on or about October 16, 2019, to interview her as part of her "investigation" into Tran.  When Guiden asked why Tran had been fired already if the investigation was not complete, Lafrenz responded that she "knew where it was going."

2.78   Lafrenz then asked Guiden if anyone ever made her feel uncomfortable. Guiden responded that Walia made her very uncomfortable and described to Lafrenz both the offensive sexual comments Walia made to her as well as coding issues Walia discussed with her over the past months. Guiden also raised concerns about other Daiya employees making improper comments about Tran.

2.79   Lafrenz responded by stating that she knew of Guiden's same sex orientation and that she knew Guiden was in a relationship with Tran. When Guiden protested the invocation of her sexual orientation into the discussion, Lafrenz told Guiden that her keystrokes were being monitored and any violation of HIPAA would result in termination.

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

1

2.80   Guiden told Lafrenz she was in fear for her job, that Lafrenz was also

2   retaliating against her for bringing up information about improper conduct at Daiya and

3   Guiden feared being fired over false allegations as Tran had been.  Lafrenz ended the

4   call and said she would call Guiden back.

5

2.81   Because Lafrenz never called Guiden to complete the interview, Guiden

6   wrote to Lafrenz asking when they would be completing the interview.  Lafrenz did not

7   respond.  Guiden wrote again, this time expressing her concerns about retaliation and

8   explaining she did not feel safe returning to work.  Lafrenz did not respond.

9

2.82   Defendants never scheduled a meeting between Guiden and the coding

10   specialist as Guiden requested.

11

2.83   Because now both Walia and Lafrenz had not responded to Guiden's

12   report of harassment and discrimination, on October 18, 2019, Guiden wrote to Penny

13   Silvernale, Daiya's Human Resources Director, with the subject line "Hostile Work

14   Environment/Sexual Harassment", reporting again the sexually hostile environment and

15   related issues so they could be properly investigated.

16

2.84   After once again receiving no response, Guiden wrote again to Silvernale

17   on October 23, 2019, noting that she feared returning to the workplace after Lafrenz's

18   threats and Walia's actions and asked again what provisions had been made to address

19   her retaliation concerns.

20

2.85   Instead of addressing Guiden's concerns, Defendants fired Guiden via

21   email on October 23, 2019, accusing her of insubordination and describing her reports

22   of "dishonesty, intimidation, harassment and retaliation", as "false and inflammatory

23   accusations."  Defendants stated that they investigated Guiden's accusations

24   themselves and found no wrongdoing, and also threatened Guiden if she made any

25

26

COMPLAINT - 14
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

1    statements related to those accusations to third parties – in an attempt to prevent

2    Guiden raising her concerns with the EEOC or other regulatory agencies.

3        2.86   Guiden twice requested a copy of her personnel file and Defendants

4    refused to provide it to her.

5        2.87   On October 25, 2019, Daiya sent a Tran a letter, signed by Chris Lafrenz,

6    that now included a vague and repetitive laundry list of purported "reasons" for Tran's

7    termination as follows:

8        (a)   Engaging in a pattern of egregious and inappropriate conduct within
             the workplace which resulted in numerous complaints from other staff
9             members.

10       (b)   Materially breaching your job duties to Daiya, including but not limited
             to, failing to comply with Daiya's company policies, engaging in
11            unprofessional conduct that interferes with the treatment and care of
             patients, all of which affect the immediate care or safety of patients
12
         (c)   Violating the Daiya employee Handbook and applicable rules ; Policies
13            and procedures;

14       (d)   Violating the standards of ethics of Daiya;

         (e)   Violating Daiya policy against harassment;
15
         (f)   Engaging in a pattern of harassment, including derogatory and
16            offensive remarks made to other staff, providers and/or employees,
             including, but not limited to, statements of a sexual nature and/or
17            relating to the use of illegal drugs;

18       (g)   Engaging in a pattern of sexual harassment, including making sexually
             oriented jokes and graphic verbal commentaries, and using sexually
19            degrading words;

20       (h)   Creating an intimidating, hostile or offensive working environment;

21       (i)   Insubordination, bad attitude, rude, discourteous, abusive, and/or
             threatening language toward staff, providers and/or employees;

22       (j)   Displaying abusive behavior toward other staff providers and/or
             employees, including, but not limited to, by sending intimidating text
23            messages and yelling at other providers; and

24       (k)   Harassing, threatening and or intimidating other staff, providers
             and/or employees, including, but not limited to, by sending
25            intimidating text messages and yelling and speaking in an
             unprofessional and harassing manner to other providers.
26

COMPLAINT - 15
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

2.88    On October 18, 2019, Guiden was also threatened by Defendant Daiya's attorney, Patrick Vail, via email for reporting concerns about Defendant Daiya's improper coding and fraudulent billing practices.  The letter characterized her reporting concerns about coding practices as "almost certainly" violating HIPAA and threatened to sue her.

2.89    On or about November 15, 2019, Guiden filed a charge of discrimination with the EEOC relating to sexual harassment, discrimination, and retaliation concerns during her employment with Defendant Daiya.

2.90    On or about December 20, 2019, Tran filed a charge of discrimination with the EEOC relating to sexual harassment, discrimination, and retaliation concerns during her employment with Defendant Daiya.

2.91    Tran also looked for work, seeking other Physician Assistant positions but was unsuccessful even though she had solid credentials and she had not previously had difficulty finding employment.

2.92    On about January 20, 2020, Guiden provided additional information to the EEOC, reiterating her charge of sexual harassment and retaliation and providing additional detail, as well as reporting coding and ethical problems at Daiya.

2.93    On January 28, 2020, Defendant Walia was contacted by a physician who was potentially hiring Tran. After confirming that Tran's "medical care for patients is not in question and that no patients suffered harm," Defendant Walia made numerous false, humiliating, and harmful statements regarding Tran intended to damage her reputation and ability to obtain employment, which were confirmed as follows in writing to Tran by the potential employer who had spoken with Walia:

1. You were terminated for threatening bodily harm to nursing staff and were the most terrible employee he ever had
2. At the time of termination Dr. Walia's wife was concerned for her safety due to retaliation from you
3. You were described as having significant personality issues, and possibly a personality disorder, and that you are alcoholic.
4. The staff were afraid of you and believed you were stalking them
5. You have been the scariest provider that he has out of 75
6. He confirmed your employment from March –October 2019 but was not able to describe to describe the level of care you provide.

COMPLAINT - 16
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100,
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

6. Your medical license in WA is under review and that is likely why you are applying in AZ
7. You had a boundary violation with a patient without further details

2.94    Around September 2020, Tran learned that Defendant Daiya had filed a retaliatory complaint with the MQAC falsely accusing Tran of a variety of things, including sexually harassing a medical assistant, threatening another employee with physical violence, forced out of a facility where she worked up until her termination, and asserting that she had made false complaints about Daiya to various regulatory entities. That complaint is set forth below:

> Ngoc Tran was fired ███████████ because she was very unprofessional. She sexually harassed one ████ Medical Assistants who reported it to HR. She was insubordinate and had many interpersonal conflicts with staff at facilities and other providers. Daiya Healthcare was asked to not allow her to practice in certain facilities, and ██ then terminated her employment. In retaliation, she has filed complaint after complaint with several agencies leading to investigation after investigation. ████████████████████████████████████████████████████ She is abusing the system by lodging complaints ████████, and taking our valuable time away from patient care.

> I would like to formally lodge a complaint against Ngoc Tran PA-C. She was asked to never return to Puyallup Nursing and Rehabilitation as she was unprofessional with staff. She would use foul language, and not communicate well with others. Further, she continues to abuse the system by lodging false complaint after false complaint which has significantly taken █ resources away from patient care.

> Also, she threatened another PA-C Alicia with physical violence just prior to a staff meeting ████████████████████████████████████████. Ngoc and Alicia were separated and not allowed to work in the same facility thereafter, and Ngoc was eventually fired after an internal investigation revealed multiple instances of unprofessional conduct by her. She continues to harass our group, months after termination.

2.95    On February 4, 2021, representatives of Staff Care, another company that hires Physician Assistants to provide locum tenens assignments, notified Tran that it could not assign her to positions due to the open MQAC investigation.

2.96    Daiya chose to retain less qualified or less experienced employees who were not perceived as disabled, or were heterosexual, or who were not Vietnamese-American, and who had not protested inappropriate medical coding and fraud.

COMPLAINT - 17
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2.97   Guiden engaged in protected activity to include complaining about discrimination, or retaliation, or improper coding practices to Defendants, and later to third parties including the EEOC and the Washington Human Rights Commission.

2.98   Tran engaged in protected activity to include complaining about discrimination, or retaliation, or improper coding practices to Defendants, and to third parties including the OIG, Washington State Medical Board, the Office of the Attorney General, the EEOC and the Washington Human Rights Commission.

2.99   As a result of Defendants' wrongful, illegal, discriminatory and/or retaliatory actions, Plaintiffs have suffered both general and special damages, including past and future lost wages, benefits, severe emotional distress, humiliation, loss of enjoyment of life, pain, and suffering.

## III. FIRST CAUSE OF ACTION
### DISCRIMINATION – RCW 49.60

3.1.   Defendants perceived Tran to have a disability.

3.2.   Defendants knew Tran is female, has a same-sex sexual orientation, and is Vietnamese-American.

3.3.   Defendants perceived Guiden to have a same-sex sexual orientation.

3.4.   Defendants knew Guiden is female and is African-American.

3.5.   Defendants' treated Plaintiffs less favorably in the terms and conditions of their employment based upon sexual orientation and/or sex, and/or perceived disabilities, and/or national origin, in violation of Washington's Law Against Discrimination, RCW 49.60 et seq.

3.6.   Defendants' unwelcome conduct of a sexual nature, or that occurred because of Plaintiff's sexual orientation or sex, including the conduct by COO Lafrenz

COMPLAINT - 18
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

and Defendant CEO Walia, was sufficiently offensive or pervasive that it altered the conditions of Plaintiffs' employment, also constituting Sexual Harassment and a Hostile Work Environment for which Defendants are strictly liable.

3.7.    Plaintiffs' sex and/or sexual orientation, and/or perceived disability, and/or national origin, and/or race was a substantial factor in Defendants' decision to take adverse employment actions against Plaintiffs.

3.8.    Defendants' wrongful and discriminatory actions caused harm to Plaintiffs.

3.9.    Under Washington's Law Against Discrimination, on their discrimination claims Plaintiffs are entitled to recover all actual and compensatory, economic and non-economic, special and general damages, as well as attorneys' fees and litigation expenses and an enhanced award to offset any negative tax consequences.

## IV. SECOND CAUSE OF ACTION
### RETALIATION -- RCW 49.60

4.1    Plaintiffs engaged in protected activity by opposing conduct that she reasonably believed to be prohibited by Washington's Law Against Discrimination, in particular the conduct of Defendant Daiya's CEO Defendant Walia and Daiya's COO, Chris Lafrenz.

4.2    Defendants' conduct described herein constitutes illegal retaliation against Plaintiffs in violation of Washington's Law Against Discrimination, RCW 49.60 et seq.

4.3    Plaintiffs opposed discriminatory conduct and engaged in protected activity under state and federal laws.

COMPLAINT - 19
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

4.4     In response, Defendants retaliated against Plaintiffs for engaging in protected activity by taking actions that would dissuade a reasonable person from bringing forward similar concerns including threatening them with litigation if they reported their concerns to others.

4.5     In addition, following Tran filing a Charges of Discrimination with the EEOC and the Washington Human Rights Commission, Defendants further retaliated in response.

4.6     Defendants' wrongful and discriminatory actions caused harm to Plaintiffs.

4.7     Under Washington's Law Against Discrimination, on their retaliation claims Plaintiffs are entitled to recover all actual and compensatory, economic and non-economic, special and general damages, as well as attorneys' fees and litigation expenses and an enhanced award to offset any negative tax consequences.

## V. THIRD CAUSE OF ACTION
## DISCRIMINATION – ADA

5.1     Defendant Daiya perceived Tran to have disabilities and discriminated against Tran based upon those perceived disabilities in violation of the Americans with Disabilities Act ("ADA").

5.2     Tran's perceived disability was a substantial or motivating factor in Defendant Daiya's decision to take adverse employment actions against Tran, including termination.

5.3     Defendant Daiya's conduct was malicious, oppressive or in reckless disregard for Tran's rights.

COMPLAINT - 20
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

5.4     Tran filed a second charge of discrimination and retaliation with the EEOC on February 20, 2020.

5.5     Following its investigation the EEOC issued a "Reasonable Cause" finding in support of Tran's perceived disability discrimination and retaliation claims on November 19, 2020.

5.6     Following the reasonable cause finding, conciliation efforts failed and the EEOC issued Tran a "Right to Sue" letter on February 1, 2021.

5.7     Tran timely filed this lawsuit upon receipt of that finding and a "Right to Sue" letter.

5.8     Defendant Daiya's wrongful and discriminatory actions caused harm to Tran.

5.9     Under the ADA, on her perceived disability discrimination claims, Tran is entitled to recover compensatory, economic and non-economic, special and general damages, as well as punitive damages, attorneys' fees and litigation expenses and an enhanced award to offset any negative tax consequences.

## VI. FOURTH CAUSE OF ACTION
## RETALIATION –TITLE VII AND ADA

6.1     Plaintiff Tran opposed Defendants' sex-based discriminatory conduct prohibited by Title VII, and in particular reported the offensive and discriminatory conduct of Daiya's CEO Defendant Walia and Daiya's Chief Operating Officer, Chris Lafrenz.

6.2     In response, Defendants retaliated against Tran for engaging in protected activity by taking actions calculated to dissuade Tran and others from opposing discriminatory conduct.

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

6.3    Tran further opposed Defendant Daiya's discriminatory and retaliatory conduct by filing a charge of discrimination with the EEOC on or about December 19, 2019, raising issues of sexual harassment and discrimination as well as retaliation.

6.4    The initial discrimination charge was protected activity under the law.

6.5    Following the filing of that charge of discrimination, Defendant Daiya began a campaign of further retaliation against Tran, including instituting a baseless complaint with state medical licensing authorities as well as providing false information to Tran's potential employers.

6.6    Defendant Daiya's conduct was malicious, oppressive or in reckless disregard for Plaintiff's rights.

6.7    Tran filed a second charge of discrimination and retaliation with the EEOC on February 20, 2020.

6.8    The EEOC issued a reasonable cause finding in favor of Tran on her retaliation charge on November 19, 2020.

6.9    Following the reasonable cause finding, conciliation efforts failed and the EEOC issued a "Right to Sue" letter to Tran on February 1, 2021.

6.10    Defendant Daiya's wrongful and retaliatory actions caused harm to Plaintiff Tran.

6.11    Defendant Daiya's conduct described herein constitutes illegal retaliation against Plaintiff in violation of Title VII, 42 U.S.C. §2000e et seq., as was found by the EEOC in its investigation and confirmed by its reasonable cause finding in favor of Tran.

6.12    On her federal retaliation claims, Tran is entitled to recover all actual and compensatory, economic and non-economic, special and general damages, punitive

COMPLAINT - 22
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

damages, as well as attorneys' fees, offsets for tax impacts of any award from Defendant Daiya.

### VII. FIFTH CAUSE OF ACTION
### RETALIATION – FALSE CLAIMS ACT (31 U.S.C. §§ 3729, 3730)

7.1    The False Claims Act ("FCA") prohibits knowing submission of false information to obtain payment from the Government. 31 U.S.C. § 3729(a)(1)(A)-(C).

7.2    The FCA also prohibits retaliation against any employee who engages in protected activity by bringing forward complaints that the employee reasonably believes to be regarding acts in violation of the FCA. 31 U.S.C. § 3729(h).

7.3    Plaintiffs reasonably and in good faith believed that a variety of Defendants' coding instructions and practices and were fraudulent and violated the FCA.

7.4    Plaintiffs reasonably believed that their internal complaints about improper coding practices were necessarily complaints about potentially fraudulent claims to the government, and were protected conduct under the FCA.

7.5    Despite Plaintiffs' repeated complaints, Defendants' practices with respect to coding did not change.

7.6    Plaintiffs then affirmatively took steps to meet with an auditor to further prevent false claims from being submitted through the Medicare program.

7.7    Plaintiffs' conduct described herein was activity protected under the FCA.

7.8    Defendants knew that Plaintiffs engaged in activity protected by the FCA.

7.9    Defendants' adverse actions described herein leading up to, including, and following Plaintiffs' wrongful termination, were motivated by Plaintiffs' protected activity and were in violation of the FCA.

7.10    By these actions, Defendants violated 31 U.S.C. § 3730(h).

COMPLAINT - 23
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

7.11   Defendants' wrongful actions including threats, harassment, intimidation, discriminatory treatment in employment, suspension and termination, and false statements, were in violation of the FCA and motivated by Defendants' desire to retaliate against Plaintiffs for their lawful actions.

7.12   Defendants' retaliatory actions were a proximate cause of damage to Plaintiffs, including past wage loss and benefits, future wage loss and benefits, emotional distress, double back pay, as well as attorneys' fees and litigation expenses and other damages to be proven at trial.

## VII.   SIXTH CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

8.1   Defendants had a duty not to discharge Plaintiffs if doing so would contravene a clear mandate of public policy.

8.2   A wrongful termination in violation of public policy occurs when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act, (2) performance of a public duty or obligation, (3) exercise of a legal right or privilege, or (4) in retaliation for reporting employer misconduct.

8.3   Plaintiffs engaged in protected activity under Washington law when they refused to condone and internally reported what they reasonably perceived to be fraud in submitting forms with false codes and other false information to obtain Medicare, Medicaid and similar payments or reimbursements.

8.4   The conduct that Plaintiffs refused to engage in and protested constituted an unfair and deceptive trade practice in violation of Washington's Consumer Protection Act, RCW 19.86.020.

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

8.5     Plaintiffs' protected activity, reporting what they reasonably believed to be fraudulent activity and misconduct by Daiya employees including the submission of false or exaggerated diagnosis codes for Medicare or Medicaid patients in violation of federal and state law was a substantial factor in Daiya's decision to terminate Plaintiffs' employment.

8.6     Defendants' retaliatory termination of Plaintiffs following their protected reporting of improper coding practices was in violation of public policy.

8.7     Defendants' wrongful actions in violation of public policy were a proximate cause of damage to Plaintiffs, including past wage loss and benefits, future wage loss and benefits, emotional distress, as well as attorneys' fees and litigation expenses and other damages to be proven at trial.

## VIII. SEVENTH CAUSE OF ACTION
### DEFAMATION

9.1     Under Washington law, the "required elements for a defamation claim are (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages." *Stiles v. Kearney*, 168 Wn. App. 250, 262, 277 P.3d 9 (2012) (citing *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981)).

9.2     Following October 11, 2019, Defendants made false statements to Plaintiff Tran's potential employers and others as described above.

9.3     Following October 11, 2019, Defendants made false statements to the MQAC in an effort to harm Plaintiff Tran's license status as described above.

9.4     Defendants' statements were false and known to Defendants to be false.

9.5     Defendants' statements were not privileged.

COMPLAINT - 25
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

9.6     To establish fault as a private figure, a plaintiff "must prove negligence by a preponderance of the evidence." *Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*, 114 Wn. App. 371, 388, 57 P.3d 1178 (2002), *amended*, 64 P.3d 49 (2003). This means that the plaintiff "must show fault by the publisher in not acting reasonably to ensure that the report is accurate and complete." *Id.* at 390 (citation omitted).

9.7     Additionally, to show fault "concerning a subject of general or public interest," a private figure must show "that in publishing the statement, the defendant knew or, in the exercise of reasonable care, should have known that the statement was false, or would create a false impression in some material respect." *Id.* at 389 (citation omitted).

9.8     Moreover, "a public figure plaintiff must prove by clear and convincing evidence that the defendant uttered the offensive statement with actual malice, that is, with knowledge of falsity or reckless disregard of the truth or falsity of the statement." *Id.* at 387-88 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 169-79, 736 P.2d 249 (1987)).

9.9     Plaintiff Tran is not a public figure and her employment was not a matter of public concern until Defendants decided to make it one, but Defendants cannot transform a private matter into a public one through their own defamatory statements, or all such matters would be public in nature.

9.10     Defendants did not take reasonable care to investigate and ensure that their statements about Plaintiff Tran were accurate and in doing so were negligent.

9.11     Even if Plaintiff Tran was considered a public figure or her employment was deemed to be of public interest, Defendants acted with actual malice.

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

9.12   Actual malice exists when there is "knowledge of the falsity or reckless disregard of the truth or falsity of the statement." *Maison de France, Ltd. v. Mais Oui!, Inc.*, 126 Wn. App. 34, 44, 108 P.3d 787 (2005). Reckless disregard "requires evidence that the publisher was plagued with serious doubts as to the truth of the statement." *Alpine Indus. Computers, Inc.*, 114 Wn. App. at 394.

9.13   Defendant Daiya is chargeable with the knowledge possessed by its agents or employees. *See, e.g., State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.*, 64 Wn.2d 375, 386, 394 P.2d 979 (1964).

9.14   Defendants' statements made to MQAC and to Plaintiff Tran's potential employers, were not only false, at the time Defendants' published these statements, Defendants knew they were false, or had a high degree of awareness of their probable falsity and had completely failed to even investigate their accuracy. Thus, Defendants acted with actual malice.

9.15   A defamatory publication is libelous per se (actionable without proof of special damages) if it (1) exposes a living person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office." *Maison de France, Ltd. v. Mais Oui!, Inc.*, 126 Wn. App. 34, 44–45, 108 P.3d 787 (2005) (citing *Caruso v. Local Union No. 690 of Int'l Brotherhood of Teamsters*, 100 Wn.2d 343, 353, 670 P.2d 240 (1983)). A publication is also libelous per se if it imputes to the plaintiff criminal conduct involving moral turpitude. *Id.*

9.16   Defendants' statements described above constitute per se defamation.

COMPLAINT - 27
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

9.17  Because of Defendants' malicious defamatory statements, Plaintiff Tran's reputation suffered severe damage and Plaintiff Tran has had many potential employers refuse to employ her citing Defendants' false and defamatory statements as the reason.

9.18  As a result of Defendants' defamatory actions, Plaintiff Tran has suffered serious damages personally, professionally, economically and emotionally.

9.19  The service of this complaint, together with a summons, satisfies the requirements of the Uniform Correction or Clarification of Defamation Act, without the need for a prior request for correction, because it "[s]pecifies with particularity the statement alleged to be false and defamatory or otherwise actionable and, to the extent known, the time and place of publication," and it "[a]lleges the defamatory meaning of the statement[s][.]" See RCW 7.96.040(3)(b)-(c).

9.20  Plaintiff Tran is entitled to actual and exemplary damages, including but not limited to damages for reputational harm and lost income.

## VIII.  EIGHTH CAUSE OF ACTION
### FALSE LIGHT

10.1  Washington has adopted Restatement (Second) of Torts § 652E, recognizing invasion of privacy by false light as an independent claim. *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 471, 473-74, 722 P.2d 1295 (1986). Defamation and invasion of privacy by false light are similar, yet distinct, causes of action. *Id.* Although both actions rest on the disclosure of false or misleading information, they require different elements and allow for recovery of different damages. *Id.*

10.2  Defendants are liable for an invasion of privacy by false light when they publish statements that place a plaintiff in a false light if (1) the false light would be

COMPLAINT - 28
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

highly offensive and (2) defendants knew of or recklessly disregarded the falsity of the publication and the subsequent false light it would place the plaintiff in. *Eastwood*, 106 Wn.2d at 470-71.

10.3    Tran is not a public figure and no actual malice by Defendants is required to establish a false light claim.

10.4    Defendants knew or recklessly disregarded the falsity of their highly offensive statements to Tran's prospective employers and to MQAC and the false light that these statements would place Tran in.

10.5    Because of Defendants' false and highly offensive statements that placed Tran in a false light, Plaintiff Tran has suffered serious damages personally, professionally, economically and emotionally.

## IX.    NINTH CAUSE OF ACTION
### NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

11.1    Defendants are liable for intentional infliction of emotional distress or outrage when they engage in extreme or outrageous conduct that is intended to cause emotional distress and does cause severe emotional distress to a plaintiff. *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989).

11.2    Defendants deliberately made up false accusations described above for the sole purpose of justifying Tran's termination and published them to a variety of others to persecute Tran, ruin her career and deny her employment.

11.3    Defendants intentionally and knowingly made false statements to the MQAC and to Plaintiff's prospective employers.

11.4    The false accusations were humiliating, offensive and outrageous.

COMPLAINT - 29
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

11.5   Defendants made up accusations with the intent of deliberately harming Plaintiff Tran and preventing her from working as a Physician Assistant.

11.6   Defendants' actions were so outrageous as to be totally intolerable in a civilized community.

11.7   As a result of Defendants' outrageous conduct, Tran sustained severe harm and emotional distress.

11.8   Defendants are liable to Tran for any and all damages resulting from their outrageous and abusive actions.

## X.  TENTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH A BUSINESS EXPECTANCY

12.1   Defendants are liable for intentional interference with a business expectancy when they (1) had knowledge of the existence of the business expectancy; (2) intentionally interfered inducing or causing termination of the expectancy; (3) interfered for an improper purpose or used improper means; and (4) as a result caused damage to plaintiff. *Greensung Group, LLC v. City of Bellevue*, 7 Wn. App. 754, 768 (2019).

12.2   Tran's prospective employers contacted Defendants regarding prospective employment opportunities for Tran.

12.3   Defendants had knowledge of those business expectancies by virtue of receiving contact from potential employers of Tran.

12.4   Defendants intentionally provided false and damaging information to prospective employers and to others regarding Tran.

COMPLAINT - 30
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

12.5    Defendants refused to verify true information as to Tran's dates of employment when requested by potential employers.

12.6    Defendants' actions were not privileged.

12.7    Defendants knew of Tran's business expectancies and their actions were improper and intended to interfere with Tran's business expectancies

12.8    As a result of Defendants' improper interference Tran sustained damage to her business prospects and lost valid business expectancies.

## PRAYER FOR RELIEF AND JURY DEMAND

Plaintiffs asks the Court for the following relief:

A.      For judgment against Defendants for all actual and compensatory, economic and non-economic, general and special damages as allowed by law;

B.      For an award against Defendants of all punitive, exemplary, liquidated and double damages as allowed by law;

C.      For an award of all costs, expenses of litigation, interest, and reasonable attorneys' fees against Defendants as allowed by law;

D.      For an enhanced award to offset tax consequences to make them whole;

E.      For trial by jury; and

F.      For such other relief in Plaintiffs' favor as the court deems just and equitable.

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

1      DATED this 26th day of April, 2021.

2

3                           GORDON THOMAS HONEYWELL LLP

4                         By: _____

5                           Stephanie Bloomfield, WSBA No. 24251
                             sbloomfield@gth-law.com

6                           Andrea H. McNeely, WSBA No.
                             amcneely@gth-law.com

7                         ATTORNEYS FOR PLAINTIFF

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 32
[4831-5149-9235]

Law Office
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
### FOR THE COUNTY OF KING

| | |
|---|---|
| NGOC TRAN AND MARKITA GUIDEN | NO. 21-2-05474-5 KNT |
| Plaintiff(s) | ORDER SETTING CIVIL CASE SCHEDULE |
| VS | |
| | ASSIGNED JUDGE: PORT, Dept. 51 |
| DAIYA HEALTHCARE PLLC, ET AL | |
| | FILED DATE: 04/26/2021 |
| Defendant(s) | TRIAL DATE:04/25/2022 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES .

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (Schedule)** on the Defendant(s) along with the **Summons and Complaint/Petition.** Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion. The **Schedule** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this **Schedule**. In order to comply with the **Schedule**, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

   **You are required to give a copy of these documents to all parties in this case.**

## I. NOTICES (continued)

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $250 arbitration fee.** If a party seeks a trial de novo when an arbitration award is appealed, a fee of $400 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

3

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|---|---|
|  | Case Filed and Schedule Issued. | 04/26/2021 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. **$220 arbitration fee must be paid** | 10/04/2021 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [See KCLCR 4.2(a) and Notices on Page 2]. | 10/04/2021 |
|  | **DEADLINE** for Hearing Motions to Change Case Assignment Area [KCLCR 82(e)]. | 10/18/2021 |
|  | **DEADLINE** for Disclosure of Possible Primary Witnesses [See KCLCR 26(k)]. | 11/22/2021 |
|  | **DEADLINE** for Disclosure of Possible Additional Witnesses [See KCLCR 26(k)]. | 01/03/2022 |
|  | **DEADLINE** for Jury Demand [See KCLCR 38(b)(2)]. | 01/18/2022 |
|  | **DEADLINE** for a Change in Trial Date [See KCLCR 40(e)(2)]. | 01/18/2022 |
|  | **DEADLINE** for Discovery Cutoff [See KCLCR 37(g)]. | 03/07/2022 |
|  | **DEADLINE** for Engaging in Alternative Dispute Resolution [See KCLCR 16(b)]. | 03/28/2022 |
|  | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [KCLCR 4(j)]. | 04/04/2022 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [See KCLCR 16(a)(1)] | 04/04/2022 |
|  | **DEADLINE** for Hearing Dispositive Pretrial Motions [See KCLCR 56; CR 56]. | 04/11/2022 |
| * | Joint Statement of Evidence [See KCLCR 4 (k)] | 04/18/2022 |
|  | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 04/18/2022 |
|  | Trial Date [See KCLCR 40]. | 04/25/2022 |

The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.

### III. ORDER

Pursuant to King County Local Rule 4 [KCLCR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this Order Setting Civil Case Schedule and attachment on all other parties.

DATED:     04/26/2021


_____
PRESIDING JUDGE

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:** Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

### A. Joint Confirmation regarding Trial Readiness Report
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

### C. Trial
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule

3

7 governs these motions, which include discovery motions.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge.  All other motions should be noted and heard on the Family Law Motions calendar.  Local Civil Rule 7 and King County Family Law Local Rules govern these procedures.  The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:**  Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time.  However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule.  In addition,  discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B.  Original Documents/Working Copies/ Filing of Documents:  All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.  The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application.  Pre-registration to accept e-service is required.  E-Service generates a record of service document that can be e-filed.  Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/documents/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  **Do not file the original of the proposed order with the Clerk of the Court.**   Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.  The court may distribute orders electronically.  Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions.  If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the  Ex Parte and Probate Department.**  Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department.  **If final order and/or formal proof are entered in the Ex Parte and Probate Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**
Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count

3

includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

_____
PRESIDING JUDGE

3

1
2
3
4
5
6
                                                                    The Honorable Cindi Port

7                    SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8   NGOC TRAN and MARKITA GUIDEN,               NO. 21-2-05474-5 KNT

9                              Plaintiff,        **NOTICE OF APPEARANCE OF**
                                                 **DAIYA HEALTHCARE PLLC AND**
10          vs.                                  **BHUPINDER WALIA**

11  DAIYA HEALTHCARE PLLC, a Washington
    professional limited liability company; and
12  BHUPINDER WALIA and "JANE DOE" WALIA,
    and their marital community;
13
                               Defendants.
14

15          COMES NOW Defendants Daiya Healthcare PLLC, a Washington professional limited

16  liability company and Bhupinder Walia, and hereby enter their appearance in the above-entitled

17  action through Erin C. Seeberger of Bennett Bigelow & Leedom, P.S. as attorneys of record, and

18  requests that all further pleadings herein, exclusive of process, be served upon said attorneys at

19  their office address below stated.

20          Erin C. Seeberger
            Bennett Bigelow & Leedom, P.S.
21          601 Union Street, Suite 1500
            Seattle, WA  98101
22          T:  (206) 622-5511
            F:  (206) 622-8986
23
            You are not authorized to serve pleadings or papers by use of facsimile or electronic mail
24
    unless specifically negotiated with an attorney in the firm.
25

26

NOTICE OF APPEARANCE OF DAIYA HEALTHCARE
PLLC AND BHUPINDER WALIA - PAGE 1
01408-134\3043875

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986

1    DATED this 3rd day of May, 2021.

2                                    BENNETT BIGELOW & LEEDOM, P.S.

3

4                         By: _____
                                Erin C. Seeberger, WSBA #43809
5                               Attorneys for Defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF APPEARANCE OF DAIYA HEALTHCARE
PLLC AND BHUPINDER WALIA - PAGE 2
01408-134\3043875

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101-1363
T: (206) 622-5511  F: (206) 622-8986

1

## CERTIFICATE OF SERVICE

2

The undersigned hereby certifies under penalty of perjury under the laws of the state of Washington, that I am now, and at all times material hereto, a resident of the state of Washington, over the age of 18 years, not a party to, nor interested in the above entitled action, and competent to be a witness herein. I caused to be served, pursuant to CR5(b)(7), on this date the foregoing in the manner indicated to the parties listed below:

3

4

5

***Counsel for Plaintiff***
Stephanie Bloomfield
Andrea H. McNeely
Law Office of Gordon Thomas Honeywell, LLP
1201 Pacific Avenue, Suite 2100
Post Office Box 1157
Tacoma, WA  98401-1157
sbloomfield@gth-law.com
amcneely@gth-law.com

☐ Legal Messenger
☐ Facsimile
☒ ECF/Email
☒ 1ˢᵗ Class mail
☐ Federal Express

6

7

8

9

10

DATED this 3rd day of May, 2021.

11

12

13

Karen L. Calkins
Legal Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF APPEARANCE OF DAIYA HEALTHCARE
PLLC AND BHUPINDER WALIA - PAGE 3
01408-134\3043875